FILED
2015 Jan-06 PM 04:34
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **BROOKE PEARMAN, and** | ) |
| **JODI LEE** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **vs.** | ) **CIVIL ACTION** |
| | ) **NUMBER:** |
| | ) |
| | ) |
| | ) **JURY DEMAND** |
| **HOOTERS OF TRUSSVILLE, LLC** | ) |
| **Defendant** | ) |

## COLLECTIVE ACTION COMPLAINT

Comes now the Plaintiffs Brooke Pearman and Jodi Lee, by and through their undersigned counsel, and state the following:

1. Defendant Hooters of Trussville, LLC. ("Hooters") is a corporation conducting business in the State of Alabama. It has a location in Trussville, Alabama ("Trussville Location").

2. Plaintiff Brooke Pearman ("Pearman") resides in Warrior, Alabama. From June 21, 2009 through July 21, 2014, Pearman was employed by Defendant as a server at its Trussville location.

3.  Plaintiff Jodi Brooke Lee ("Lee") resides in Hoover, Alabama. From around May 2011 through the present, Lee has been employed by Defendant as a server and a bartender.

4.  This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 et seq. and, specifically, the collective action provision of the Act found at §216(b), for equitable and declaratory relief and to remedy violations of the wage provisions of the FLSA by Defendant, which have deprived named Plaintiffs, and all other similarly situated servers employed by Defendant, of their lawful wages.

5.  This action is brought to recover unpaid compensation, in the form of unpaid wages and overtime, owed to the Plaintiffs, and all similarly situated servers employed by Defendant, pursuant to the FLSA. For up to three years prior to the filing of this complaint, Defendant has had a uniform policy and practice of requiring employees to participate in an invalid tip share.

6.  Plaintiffs and all other similarly situated servers employed by Defendant were paid an hourly cash wage of $2.13 per hour.

7.  On "Day Shifts" the Trussville location would not open its doors to start serving customers until 11:00 AM.

8.  Plaintiffs and, on information and believe, all similarly situated servers were required early for pre-shift meetings known as "Jump Start" meetings.

9.  The "Jump Start" meetings started 30 minutes before each scheduled shift start time and would last 20 to 30 minutes.

10. Plaintiffs, and on information and belief, all similarly situated servers scheduled for "Day Shift" were required to arrive before 11:00 AM, before any customers arrived. However Defendant still only paid servers $2.13 per hour and claimed a $5.13 per hour tip credit even though no tips were being generated during this pre-customer time.

11. Plaintiffs, and on information and belief, all similarly situated servers scheduled for "Night Shift" were required to attend "Jump Start Meetings" that started at 4:30 PM. Defendant only paid servers $2.13 per hour and claimed a $5.13 per hour tip credit for this pre-customer serving time even though no tips were being generated.

12. Servers on the "Night Shift" were only allowed to start serving customers at or after 5:00 PM.

13. Often times Servers would have to wait a period of time for a customer to be seated in their section before they would start performing tip producing duties.

14.    During their shift, Plaintiffs, and on information and belief, all similarly situated servers were required to perform non-serving duties, yet were only compensated the wage of a tipped employee, $2.13 per hour.

15.    Duties performed during this time included washing windows, cleaning section, wiping down tables, chairs, window ledges, and baseboards, making tea which involved retrieving drink containers, tea bags, and sugar from the back and mixing them, setting up tables and server stations which involved filling table caddies with sugar, ketchup, mustard, and mayonnaise packets, filling salt and pepper shakers, filling cracker baskets, stocking server stations with to go bags, to go cups, to go silverware, napkins, paper towels, and any supplies that would be needed throughout the day.

16.    Defendant required servers to participate in a tip share scheme including other employees who did not and do not customarily receive tips from customers.

17.    Defendant required servers to contribute a portion of their tip earnings to "Staff Guys" who do not directly interact with customers and work in the kitchen area, cleaning dishes, transporting trash outside the location, and occasionally restocking ice.

4

18.   Plaintiffs and similarly situated servers were required to pay a portion of
their cash time earnings based on a percentage of their food sales for that
particular shift.

19.   "Staff Guys" are non-tipped employees as they are not employed to engage
with the customer, but perform their dish cleaning, trash disposal, and ice
restocking away from customers. Whatever interaction "Staff Guys" have
with customers if any, was incidental.

20.   The "Staff Guys" do not customarily and do not regularly receive more than
thirty dollars in tips a month directly from customers nor do they provide
"service" to customers in a way that warranted a share of the gratuity left by
customers.

21.   Defendant's inclusion of these non-tipped employees in the tip share
invalidates the tip share, resulting in the misapplication of the tip credit, as
well as the misappropriation of server's tip-earnings.

22.   The Trussville location stops seating customers at 12:00 AM Monday
through Friday, 1:00 AM on Saturdays, and 11:00 PM on Sundays.

23.   Plaintiffs, and, upon information and belief, all other similarly situated
Servers were required to perform non-tip producing work after they stopped
serving customers. Duties performed during these times included cleaning

5

tables, sweeping and vacuuming floors, cleaning under tables, wiping down tables, organizing chairs, filling condiment dispensers, servicing the wait station, emptying cracker baskets and bringing them to the dishwasher, dismantling  and cleaning drink containers which involved bringing them to the back, washing them with bleach and rinsing them, picking up trash, rolling silverware, cleaning coolers which often involved removing every item from the cooler to wipe it down, and then putting the items back inside.

24.    Plaintiffs and other similarly situated servers were required to wait until the last customer at the entire location left, even if their particular section had no more customers.

25.    Bartenders were required to stay until the last customer left.

26.    Plaintiffs were only free to leave following the Manager's final walk-through.

27.    Plaintiffs and other similarly situated employees spent a substantial time -- in excess of 20% of their working time -- performing non-tip-producing activities such as attending the pre-shift Jump Start meeting, during the shift non-tipped work, and post-shift work.

6

28.   Plaintiffs, and other similarly situated servers and bartenders, are not compensated for this time spent waiting on the administration of the tip share.

29.   Defendant's total deductions from employees' tip income enriched it by elevating beyond its approximate financial posture had it employed a valid tip sharing system and/or not employed any tip sharing system.

30.   Plaintiffs and all other similarly situated employees should have been paid at least the minimum cash wage spent in performing the non-tip producing duties.

31.   Defendant improperly claimed the FLSA tip credit (29 U.S.C. § 203(m)) for time spent performing this non tip-producing work.

32.   Time spent on these non-tip producing activities was not occasional, incidental, or insignificant; it was substantial.

33.   On information and belief, all Servers employed by Defendant had these same duties and responsibilities.

34.   On information and belief, all bartenders employed by Defendant had these same duties and responsibilities.

35.   Plaintiffs and, on information and belief, all other similarly situated Servers and bartenders were subject to Defendant's illegal pay practices, and are similarly situated for purposes of their job duties.

36.   Plaintiffs and all similarly situated seek who elect to participate in this action, seek misappropriated tip monies, unpaid wages and overtime compensation, an equal amount of liquidated damages, attorneys' fees, and costs pursuant to 29 U.S.C. §216(b).

37.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331.  Venue is proper in the Northern District of Alabama, pursuant to 28 U.S.C. §1391(b).

38.   Defendant is subject to personal jurisdiction in the State of Alabama for the purpose of this lawsuit.

39.   At all times material to this action, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce as defined by §203(s)(1) of the FLSA.

40.   Defendant Hooters is an interstate company whose employees are engaged in interstate commerce and whose employees handle and/or work on goods that have been moved in and/or produced in commerce.  Its annual gross volume of business exceeds $500,000.00.

41.   At all times relevant to this action, Defendant was an "employer" of Plaintiffs as defined by §203(d) of the FLSA.

42.   At all times material to this action, Plaintiffs, and all others similarly situated Servers and bartenders were "employees" of Defendant as defined by §203(e)(1) of the FLSA. They also worked for Defendant within the territory of the United States within three years preceding the filing of this lawsuit.

43.   The provisions set forth in §207 of the FLSA apply to Defendant, and the Plaintiffs and all similarly situated servers and bartenders were covered by §207 of the FLSA during their employment with Defendant.

44.   The Plaintiffs and all similarly situated servers and bartenders employed by Defendant were individually engaged in interstate commerce and/or the production of goods for interstate commerce while working for Defendant. Their interstate commercial activity included, but was not limited to, serving customers who were traveling in interstate commerce, serving food that originated out of state, and processing credit card transactions that crossed state lines.

45.   On information and belief, Defendant has intentionally failed and/or refused to pay Plaintiffs and all other similarly situated servers, and bartenders according to the provisions of the FLSA.

9

46.   Defendant's systems and practices relating to its invalid tip sharing arrangement resulting in its misappropriation of tip monies, non-payment of wages and overtime to Plaintiffs and all similarly situated Servers and bartenders disqualifies the Defendant from claiming any FLSA overtime exemptions, have existed since at least January of 2012.

47.   On information and belief, Defendant has been aware of the requirements of the FLSA and its corresponding regulations and their own violations of the FLSA since at least January of 2012.  Despite this knowledge, Defendant has failed to pay the Plaintiffs and similarly situated Servers and bartenders the amount of pay required by the FLSA.

48.   There are numerous similarly situated Servers and bartenders of Defendant who have been improperly compensated in violation of the FLSA and who would benefit from the issuance of Court-Supervised Notice of the present lawsuit and the opportunity to join the present lawsuit. These similarly situated employees are known to Defendant and are readily identifiable and can be located through Defendant's records - specifically, all Servers, lead servers, and bartenders who have been employed by Defendant and have not been properly compensated would benefit from Court-Supervised Notice and the opportunity to join the present lawsuit and should be so notified.

49.    On information and belief, Defendant has engaged in a widespread pattern and practice of violating the provisions of the FLSA by failing to pay Plaintiffs and all similarly situated Servers and bartenders in accordance with §207 of the FLSA.

50.    As a result of Defendant's violations of the FLSA, Plaintiffs and all other similarly situated Servers and bartenders have suffered damages by failing to receive compensation in accordance with §207 of the FLSA.

51.    In addition to the amount of unpaid wages and benefits owed to the Plaintiffs and all other similarly situated Servers and bartenders, they are also entitled to recover an additional equal amount as liquidated damages pursuant to 29 U.S.C. §216(b) and prejudgment interest.

52.    On information and belief, Defendant's actions in failing to compensate Plaintiffs and all other similarly situated servers and bartenders in violation of the FLSA, were willful.

53.    On information and belief, Defendant has not made a good faith effort to comply with the FLSA.

54.    Plaintiffs and all servers and bartenders are also entitled to an award of attorney's fees pursuant to 29 U.S.C. §216(b).

55.    Plaintiffs and all other similarly situated servers and bartenders have no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for lost overtime and wages, back-pay, and a declaratory judgment is their only means of securing adequate relief.

56.    Plaintiffs and all other similarly situated servers and bartenders are now suffering, and will continue to suffer irreparable injury from Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

WHEREFORE, Plaintiffs, individually and on behalf of all other similarly situated servers and bartenders, pursuant to §216(b) of the FLSA, pray for the following relief:

a.   At the earliest possible time that they be allowed to give notice, or that the Court issue such Notice, to all servers who have been employed by Defendant during the three years immediately preceding the filing of this suit, and to all other potential plaintiffs who may be similarly situated, informing them that this action has been filed, the nature of the action, and of their right to opt-into this lawsuit if they were not paid compensation and benefits for all hours worked pursuant to 29 U.S.C. §216(b);

b. An order awarding damages in the amount of their respective unpaid
compensation and benefits, plus an equal amount of liquidated damages
pursuant to 29 U.S.C. §216(b), and/or prejudgment interest;

c. An order awarding reasonable attorneys' fees, including the costs and
expenses of this action;

d. Such other legal and equitable relief including, but not limited to, any
declaratory relief to which they may be entitled;

e. An order requiring Defendant to make Plaintiffs and all other similarly
situated servers  and bartenders whole by awarding them lost wages (plus
interest) and liquidated damages; and

f. Plaintiff further demands a jury to try the issues when joined.

## JURY DEMAND

## THE PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.


DATED: December 6, 2014

Respectfully submitted,

/s/ Daniel E. Arciniegas
Jon C. Goldfarb (ASB-5401-F58J)
Daniel E. Arciniegas (ASB 7809-D67A)
L. William Smith (ASB 8660-A61S)
Counsel for Plaintiff

**OF COUNSEL:**
WIGGINS, CHILDS, PANTAZIS, FISHER,
& GOLDFARB, LLC.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone No.: (205) 314-0500
Facsimile No.: (205) 254-1500

**DEFENDANTS' ADDRESS:**
Hooters of Trussville, LLC.
c/o CT Corporation System
2 North Jackson Street
Suite 605
Montgomery, AL 36104